**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FCA US LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> Defendants. | Case No. 24-cv-02309 <br><br> **Judge Andrea R. Wood** <br><br> **Magistrate Judge Jeannice W. Appenteng** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiff FCA US LLC submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

II. STATEMENT OF FACTS ................................................................................................ 2

    A. FCA's Trademarks and Products ........................................................................ 2

    B. Defendants' Unlawful Activities ........................................................................ 3

III. ARGUMENT ..................................................................................................................... 4

    A. Standard for Temporary Restraining Order and Preliminary Injunction ................ 5

    B. FCA Will Likely Succeed on the Merits ............................................................... 6

    C. There Is No Adequate Remedy at Law, and FCA Will Suffer Irreparable Harm in the Absence of Preliminary Relief ........................................................... 8

    D. The Balancing of Harms Tips in FCA's Favor, and the Public Interest Is Served by Entry of the Injunction ........................................................................ 9

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ........................................... 10

    A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the FCA Trademarks Is Appropriate .............. 10

    B. Preventing the Fraudulent Transfer of Assets Is Appropriate ............................. 11

    C. FCA Is Entitled to Expedited Discovery ............................................................ 12

V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF .......................................... 13

VI. CONCLUSION ................................................................................................................ 13

**MEMORANDUM OF LAW**

I.  **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff FCA US LLC ("FCA" or "Plaintiff") is requesting temporary *ex parte* relief based on an action for trademark infringement, counterfeiting, and false designation of origin against the defendants identified on Schedule "A" to the Complaint (collectively, the "Defendants"). As alleged in Plaintiff's Complaint, Defendants are offering for sale and/or selling unauthorized and unlicensed products, namely automotive accessory products, using infringing and counterfeit versions of the federally registered FCA trademarks (the "Counterfeit Products") through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases").

Defendants run a sophisticated counterfeiting operation and have targeted sales to Illinois residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Illinois residents can purchase Counterfeit Products. The e-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them. Further, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of the registered FCA trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

---

[1] The e-commerce store URLs are listed on Schedule A to the Complaint under the Online Marketplaces.

## II. STATEMENT OF FACTS

### A. FCA's Trademarks and Products

In January of 2021, Peugeot S.A. merged with and into Fiat Chrysler Automobiles N.V., with Fiat Chrysler Automobiles N.V., as the surviving company in the merger. *See* Declaration of Thomas H. Hipelius (the "Hipelius Declaration") at ¶ 2. The combined company was renamed Stellantis N.V. ("Stellantis"). *Id*. FCA US LLC is a wholly owned indirect subsidiary of Stellantis. *Id*. FCA US LLC and Stellantis are referred to herein together or individually as "FCA."

FCA is a multinational automotive manufacturing corporation and is one of the largest automakers in the world, with millions of vehicles sold in the United States and globally, resulting in billions of dollars in revenue. *Id.* at ¶ 3. FCA is associated with some of the most famous brands in the automotive industry, including Chrysler, Dodge, Fiat, Jeep, Lancia, Maserati, Opel, Peugeot, Ram, Vauxhall, Alfa Romeo, and Citroen. *Id.* at ¶ 4.

Propelled by its reputation and recognizable trademarks, which are carefully curated and monitored, consumers recognize Plaintiff and the FCA brands as a source of reliable and quality vehicles, vehicle parts, and accessories (collectively, the "FCA Products"). *Id.* at ¶ 5. FCA has registered many of its trademarks with the United States Patent and Trademark Office. *Id.* FCA Products typically include at least one of FCA's registered trademarks. *Id.* FCA uses its trademarks in connection with the marketing of its FCA Products, collectively referred to as the "FCA Trademarks." *Id.* The U.S. Registrations for the FCA Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id* at ¶ 6. The registrations for the FCA Trademarks constitute *prima facie* evidence of their validity and of FCA's exclusive right to use the FCA Trademarks pursuant to 15 U.S.C. § 1057(b).

The FCA Trademarks are distinctive when applied to the FCA Products, signifying to the purchaser that the products come from FCA and are manufactured to FCA's quality standards. *Id.* at ¶ 7. Whether FCA manufactures the products itself or contracts with others to do so, FCA has ensured that products bearing the FCA Trademarks are manufactured to the highest quality standards. *Id*. The FCA Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been used by FCA for many years. *Id.* at ¶ 8. The innovative marketing and product designs of the FCA Products have enabled the FCA brands to achieve widespread recognition and fame and have made the FCA Trademarks some of the most well-known marks in the industry. *Id.* The widespread fame, outstanding reputation, and significant goodwill associated with the FCA brands have made the FCA Trademarks valuable assets of FCA. *Id.*

B. **Defendants' Unlawful Activities**

The success of the FCA brands has resulted in significant counterfeiting of the FCA Trademarks. Hipelius Declaration at ¶ 11. Consequently, FCA has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. *Id.* In recent years, FCA has identified numerous fully interactive e-commerce stores, including those operating under the seller aliases, which were offering for sale and/or selling Counterfeit Products to consumers in this Judicial District and throughout the United States. *Id.*

FCA's well-pleaded allegations regarding registration patterns, similarities among the e-commerce stores operating under the Seller Aliases and the Counterfeit Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants and that Defendants are interrelated. If Defendants provide additional credible information regarding their identities, FCA will take appropriate steps to amend the Complaint.

## III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to FCA's reputation and the goodwill symbolized by the FCA Trademarks. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the FCA Trademarks and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new e-commerce stores under new aliases and move any assets to offshore bank accounts, outside the jurisdiction of this Court. *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶¶ 5-11. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, FCA respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores operating under the Seller Aliases. Specifically,

Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold Counterfeit Products to residents of Illinois. *See* Complaint at ¶¶ 2, 17, 25-26. *NBA Properties, Inc. v. HANWJH,* 46 F.4th 614, 624-27 (7th Cir. 2022); s*ee, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendants offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused FCA substantial injury in the State of Illinois.

## A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g*. *Charter Nat'l Bank & Trust v. Charter One Fin., Inc*., No. 1:01-cv-00905, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc*., 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id*. The Court then weighs all of these factors, "sitting as would a chancellor in equity,"

when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

### B. FCA Will Likely Succeed on the Merits

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, a plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id.*

In this case, the FCA Trademarks are distinctive and are registered with the United States Patent and Trademark Office. Hipelius Declaration at ¶¶ 5-7. The registrations for the FCA Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id* at ¶ 6. The registrations for the FCA Trademarks constitute *prima facie* evidence of their validity and of FCA's exclusive right to use the FCA Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, FCA has not licensed or authorized Defendants to use any of the FCA Trademarks, and none of the Defendants are authorized retailers of FCA Products. *Id.* at ¶ 14. Thus, FCA satisfies the first element of its Lanham Act claim.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendants' use of the FCA Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

FCA has submitted extensive documentation showing that Defendants are selling Counterfeit Products that look similar to genuine FCA Products and use infringing and counterfeit marks identical to the FCA Trademarks. Both FCA and Defendants advertise their products to consumers via the Internet, targeting consumers searching for genuine FCA Products. Hipelius Declaration at ¶¶ 10, 12-14. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine FCA Products from Counterfeit Products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine FCA Products to purchase Counterfeit Products instead. In that regard, Defendants advertise Counterfeit Products using the FCA Trademarks. Hipelius Declaration at ¶¶ 14-15. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off"

their goods as genuine FCA Products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, FCA is likely to establish a *prima facie* case of trademark infringement, counterfeiting, and false designation of origin.

### C. There Is No Adequate Remedy at Law, and FCA Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Because Plaintiff has shown a likelihood of success on the merits, Plaintiff is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). Moreover, the Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the FCA Trademarks has and continues to irreparably harm FCA through diminished goodwill and brand confidence, damage to FCA's reputation, loss of exclusivity, and loss of future sales. Hipelius Declaration at ¶¶ 22-26. The extent of the harm to FCA's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,*

8

300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). FCA will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Hipelius Declaration at ¶ 27.

### D. The Balancing of Harms Tips in FCA's Favor, and the Public Interest Is Served by Entry of the Injunction

As noted above, if the Court is satisfied that FCA has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm FCA will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As FCA has demonstrated, Defendants have been profiting from the sale of Counterfeit Products. Thus, the balance of equities tips decisively in FCA's favor. The public is currently under the false impression that Defendants are operating their e-commerce stores with FCA's approval and endorsement. In this case, the injury to the public is significant, and the injunctive

relief that FCA seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the FCA Trademarks Is Appropriate

FCA requests a temporary injunction requiring the Defendants to immediately cease all use of the FCA Trademarks or substantially similar marks on or in connection with all e-commerce stores operating under the Seller Aliases. Such relief is necessary to stop the ongoing harm to the FCA Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the FCA Trademarks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. FCA is currently unaware of both the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute, sell and offer to sell Counterfeit Products. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order).

## B. Preventing the Fraudulent Transfer of Assets Is Appropriate

FCA requests an *ex parte* restraint of Defendants' assets so that FCA's right to an equitable accounting of Defendants' profits from sales of Counterfeit Products is not impaired.[2] Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by FCA meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, FCA has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), FCA is entitled, "subject to the principles of equity, to recover ... defendant's profits." FCA's Complaint seeks, among other relief, that Defendants account for and pay to FCA all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant FCA's request for a prejudgment asset freeze to preserve relief sought by FCA.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (*citing Grupo Mexicano*, *de Desarollo, S.A. v. Aliance*

---

[2] FCA has filed a Motion for Leave to File Under Seal certain documents for this same reason.

*Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

FCA has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

    **C.    FCA Is Entitled to Expedited Discovery**

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. See Fed. R. Civ. P. 26(b)(2).

FCA respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in FCA's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. See, e.g., *Deckers Outdoor Corporation v. The Partnerships, et al.*, No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). FCA's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, FCA respectfully requests that expedited discovery be granted.

## V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, trademark infringement, and false designation of origin, Plaintiff respectfully requests this Court require it to post a bond of no more than ten thousand U.S. dollars ($10,000.00). *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) ($10,000 bond).

## VI. CONCLUSION

Defendants' counterfeiting operations are irreparably harming FCA's business, its famous FCA brands, and consumers. Without entry of the requested relief, Defendants' sale of Counterfeit Products will continue to lead prospective purchasers and others to believe that Defendants' Counterfeit Products have been manufactured by or emanate from FCA, when in fact, they have not. Therefore, entry of an *ex parte* order is necessary. In view of the foregoing and consistent with previous similar cases, FCA respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

Dated this 22nd day of March 2024.    Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Kahlia R. Halpern
Berel Y. Lakovitsky
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
khalpern@gbc.law
blakovitsky@gbc.law

*Counsel for Plaintiff FCA US LLC*